that we'll start with, and then we also have five cases on our regular argument calendar. One of them is on submission. I'm told that counsel are present for all of them, so I won't read the calendar. We will instead begin with the first case, the motion. Mr. Parisi. Good morning, Your Honor. You've got five minutes out of the gate. Let's just give it one minute so everybody's settled. And you may proceed. Good morning. I am Matthew Parisi from Law Firm of Blakely, Platten, Schmidt in White Plains, New York. I'm here on behalf of the County of Rockland, its county executives, and the entire legislature of Rockland County. I want to start out by stressing that Rockland County is particularly aggrieved by the condition pricing plan that is now in effect. Rockland County is... More aggrieved than New Jersey or so. Yes, it is because of the difficulty in getting from Rockland County into the congestion district via mass transit. A Rockland County resident has to take New Jersey path down into New Jersey and then into the congestion pricing district. It's a two-seat trip. It often takes more than two hours to get in and out of Rockland to get in and out of the congestion pricing district. It's also a very limited schedule. There's instances where there's one track line. So in the afternoons, often there's two-hour delay between trains heading back that can eventually get you back to Rockland County. So particularly today, coming down today from Rockland County for an early morning argument, it's a very... It's a difficult challenge and can also take a considerable amount of time to get back to Rockland County. And that time, there's no mention of that. Was traffic any lighter than on a typical Monday morning? Yes. Well, Tuesday morning, but I didn't feel that there was any benefit. I did drive in today and there was congestion. And the other issue that has arisen is, well, even if it... I don't think it's been determined that there would be less congestion in the district, but there are certainly already indications of more congestion on the way in from Rockland County in particular. And more congestion getting to a train line if you have to drive to one. The irreparable harm. Okay. So the irreparable harm for these purposes is the fact that the residents will not receive their refund back if they ultimately were successful on appeal. Why do you say that? Why, you know, these days of electronic payments, why would it be hard simply to reverse the payments? Okay. I'd say because of the MTA's track record. The MTA does not have a good track record in doing refunds. We submitted to the lower court records from the Better Business Bureau showing that they're the lowest rated of all companies around. So it's very challenging to get anything returned to them. I think if you've ever had the experience... But if there were court order, presumably that would motivate them. There's no technical reason why they can't do this, right? It's not like there's a bunch of people who are shoveling in. It's pretty much all electronic at this point, right? Yes, but you're suggesting that that would be simple processing. We don't think that... Well, you're saying they have a bad track record. Maybe they're slow and maybe they're lazy. Who knows? But I mean, I guess if at the end of the day there's an order to refund the $9 or whatever it is at various times of day, you're saying that there is a technical impossibility? You're saying there's a likelihood that a large number of people who paid that would not be able to be identified? Yes, I'd say there's that likelihood. There's people who are coming in and getting photographed and by mail who don't have E-ZPass. That presents its own challenges. Also issues from out-of-state commuters, although not from Rockland. But they'll know who they are, so they would easily... But they use that same argument when they say there should only be the toll at the entrance to the central business district is enough and they won't do it by miles. But it should be the distance traveled on the city. That is in the congestion pricing district. If a stay is issued... So that's a technical issue too. Sometimes they say they can't. Sometimes they say they can. If a stay is issued, how much would the city lose each day? What's the estimate? So we look at that very differently. It's not the city losing money. It's the commuters paying money. So a tax is not the MTA's money to lose. This is money that's coming out of the commuters. How much would the city not collect if there is a stay? So there's 700,000 commuters a day at $9 a day. So it's a considerable amount. I mean, if it turns out that the stay is improvidently issued, would Rockland County be on the hook for what is not collected in the meantime? So the government of Rockland County, you're saying? Yeah, sometimes when an injunction is issued, there has to be some kind of a bond posted. Yes. Has there been discussions of that in this case? There has not been any of those discussions. It would be the loss of the commuters. Could the MTA come after Rockland County for $700,000 a day that was not collected? I don't see a way that they can do that, but Rockland County already has a value gap with the services. They pay $40 million into the MTA, and they do not receive the benefits that others receive from the MTA. So they're one of the largest value gaps of all the surrounding communities. So I see I'm at five minutes, but I'm happy to answer other questions. Well, I mean, since your briefing, the district court in New Jersey denied a comparable motion. How does that affect, if at all, the arguments you're making here today? So we're making different arguments. I think there's a number of different challenges to the congestion pricing program. Some courts in New Jersey, that's more of an administrative attack against the congestion pricing plan than the constitutional arguments that we're making here. So they're related, but different bases for making that claim. And our claim here is that this program is unconstitutional. All right. Thank you, Mr. Parisi. Okay. Thank you. We'll now hear from Mr. Trice. Am I pronouncing that right? You are. Thank you, Your Honor. Excuse me. Good morning, Your Honors, and may it please the court. Brandon Trice for the Defendant Sapeli's Metropolitan Transportation Authority and Triborough Bridge and Tunnel Authority. I wanted to start by just responding to a couple of points on irreparable harm that were raised by Rockland a moment ago. First of all, as I believe you noted, Judge Sullivan, there is a refund mechanism in place. The record establishes that. We've submitted the declaration of the TBTA's chief operating officer. This is ECF 17.5 at pages 4 and 5, where she establishes and lays out how, I believe it's 92 to 95 percent of drivers use E-ZPass, and otherwise it's mail-in. As you noted, Judge Chin, there is no, you go in and you throw some coins in these days. So everything, identity and amount, is known and can be refunded. Also, as you noted, Judge Chin, in terms of irreparable harm to the defendants and the equities, the loss to our clients would be $40 million a month based upon estimated annual revenues. That's at page 6 of the declaration that I just referenced a moment ago. In addition, I won't belabor the factors because I think Judge Seibel's thorough order handles those very well, but Judge Sullivan, as you noted, since the motion has been made by Rockland County, Judge Bibas of the Third Circuit summarily denied New Jersey's emergency motion for a stay on January 4th. We would note for the Court that that was in less than 24 hours and we were actually not permitted to submit a reply, so we thought that it was pretty straightforward to Judge Bibas in that instance. Judge Lyman of the Southern District has also, of course, issued a denial in a 111-page decision, finding that there was no irreparable harm as well. Beyond that, I'll just note a few points for the Court's consideration. One, of course, this is an appeal from a denial of a preliminary injunction, so I just want to make sure it's clear to everyone that that means the review is, of course, for abuse of discretion. Obviously, an error of law would be an abuse of discretion, but a factual error, and we think the factual record that we've created here is extremely thorough, would be reviewed for a clear error in that respect. Two, as Rockland has recognized below in its briefing, it's critical that congestion pricing has now begun, and that's critical because now they're actually seeking what's called a mandatory injunction instead of a prohibitory injunction, and a mandatory injunction means they have to show a heightened standard of a, quote, clear showing that they're entitled to relief requested, and that for a Finally, I will just note that on the equities, the fact that the program has gone into effect, Judge Seibel noted in her decision denying a stay, that they brought a motion for a stay after coming to this Court. She noted in her decision the fact that the program is now in effect indicates the equities further supports our clients because, quote, common sense suggests that disruption and public confusion would result from halting the program after it's begun, and that said, the District Court's denial of their stay motion, docket number 62 in the District Court. If the Court has any other questions, sorry, before I get there, there's one other point I wanted to raise. Obviously, we're addressing the factors and all these issues, but I will note that as you noted in your order, Judge Sullivan denying their motion for a temporary stay. Rockland has not complied with Federal Rule of Appellate Procedure 8A1C. It did not move in the District Court first. We understand that they subsequently moved in the District Court. Yeah, I mean, does that cure it? I guess that's the question. It's a... Going back after post-briefing but before argument, does that cure the problem? Right. We're not aware of any, we looked, we're not aware of any precedent one way or the other, Your Honor, but I would note that even if it could cure, Rule 8A1C still, or 8A1 still requires further action that they have not done here that's actually not compliant. So, for instance, submitting something to this Court indicating that this has happened and stating the reasons. There are procedural barriers that they have not complied with, and while that might seem nitpicky, I will direct the Court to the Agedath Israel of America decision, which is 979 F. 3rd 177 from 2020, and there this Court in addressing a motion for a stay denied the motion for failure to first move in the District Court where there is no explanation or impracticability, quote, particularly in light of the fact that a full 11 days has elapsed. Here, Judge Seibel issued her order on December 23rd, and Rockland has since that time not sought or to explain or file anything with this Court. Do you think there'd be a constitutional problem if the only people you actually charge tolls to are the people driving in from outside of the city and you're letting everybody else just jump turnstiles and never pay for transportation? Would that be a problem? Well, we don't think there's a constitutional problem here, Your Honor, certainly not on the claims. Really, a total selective enforcement that allows certain people to not pay their fares and other people have to pay their fares? Well, I just want to make sure I fully understand the hypothetical. So if the hypothetical is... Well, it's hard to jump a turnstile in a car. Sure. But, I mean, nobody's getting prosecuted or even ticketed for it, right? Well, it's certainly a very interesting theory. I don't think we have to really worry about it here, fortunately, because they've only challenged the program. The program is for the use of the mass public transit facilities in the Central Business District, and it's obviously only upon coming into the district that you are charged. So we understand, for instance, that Rockland has made the argument that... I apologize if I'm over time. Go ahead. You can answer. We understand that Rockland has, of course, made the argument that the MTA shouldn't be able to obtain funds because of its budget issues that they claim they have. That's not an argument under the Constitution if they want to bring a claim separate from the ones they brought here. They're, of course, entitled to do what they will. But it sounds like your view is that if the MTA wanted to, they could make the subways free and just raise the tolls to $100 a day. I don't think that's my view, Your Honor. No? Yeah. I think it's an interesting hypothetical, but for purposes of the program itself, it's solely a challenge to the toll that's created on vehicles coming into the system. All right. We're here for a much more limited purpose. Okay. Thank you, Mr. Trice. Thank you. All right. Well, thank you both. We will reserve decision. Have a nice day.